UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20209-CIV-LENARD/O'SULLIVAN

AIDA ODALYS MARICHAL,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment (DE # 19, 7/1/2020) and the Defendant's Motion for Summary Judgment (DE # 20, 7/30/2020). The plaintiff seeks reversal and remand of the decision of the Commissioner of Social Security, which found that the plaintiff's eligibility for a period of disability and eligibility for Disability Insurance Benefits and Supplemental Security Income ended on October 1, 2016. (Tr. 26, 24).[1] The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 405(g), and is properly before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). This matter was referred to the undersigned by the Clerk's Notice of Judge Assignment (DE # 2, 1/16/2020). Having carefully considered the filings and applicable law, the undersigned recommends that the Plaintiff's Motion for Summary Judgment (DE # 19, 7/1/2020) be DENIED and the Defendant's Motion for Summary Judgment

---

[1] All references to "Tr." refer to the transcript of the Social Security Administration. (DE #12, 3/27/20). The page numbers listed on this document refer to the bold numbers found in the lower right-hand corner of each page of transcript, as opposed to those assigned by the Court's electronic docking system or any other page numbers.

(DE # 20, 7/30/2020) be GRANTED in accordance with the following Report and Recommendation.

**PROCEDURAL HISTORY**

The plaintiff, Aida Odalys Marichal, filed a claim for a period of disability, disability insurance benefits, and supplemental security income on October 11, 2011. (Tr. 156). Her claims were initially denied on October 19, 2011, and upon reconsideration on November 28, 2011. (*Id.*) The plaintiff then filed a request for a hearing, at which she testified on April 26, 2012, in Miami, Florida. (Tr. 129, 156). On May 4, 2012, Administrative Law Judge Martha R. Reeves issued a decision finding that the plaintiff had been disabled since June 2, 2011. (Tr. 161).

On October 5, 2016, the SSA wrote to the plaintiff informing her that she was no longer considered disabled as of October 2016. (Tr. 199). On June 15, 2017, a State agency Disability Hearing Officer affirmed upon reconsideration that the plaintiff was not disabled. (Tr. 211). The plaintiff then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on October 10, 2018. (Tr. 213, 96-128). On January 25, 2019, the ALJ found that the plaintiff's disability ended on October 1, 2016, and that the plaintiff had not become disabled again since that date. (Tr. 24-25).

On March 8, 2019, the plaintiff requested a review of the ALJ's decision and submitted additional medical records from Rafael F. Rivas-Chacon, M.D., dated October 12, 2018, and from South Miami Cardiology, dated January 19-23, 2019. (Tr. 31-95, 334). On November 19, 2019, the SSA Appeals Council ("Appeals Council") denied the plaintiff's request for review and found that the new medical evidence submitted did not show a reasonable probability that it would change the outcome of the decision. (Tr. 1-

2). On January 16, 2020, the plaintiff filed a complaint in the United States District Court for the Southern District of Florida to ask for a review of the ALJ's decision. (DE # 1, 1/16/2020).

**FACTS**

## I.    Plaintiff's Background

The plaintiff was born in January 1966 and was 45 years old when she filed an application for a period of disability on October 11, 2011. (Tr. 164-65). The plaintiff alleged a disability onset date of June 2, 2011, due to neuropathy, colon cancer, irritable bowel syndrome, diverticulitis, and high blood pressure. (Tr. 156, 164-65). The plaintiff attended high school until 10th or 11th grade and did not obtain her GED. (Tr. 103, 145). The plaintiff worked as a hospital admissions clerk from 1995 until 2011. (Tr. 105). The plaintiff rents a house with her daughter. (Tr. 102).

## II.   Summary of Medical Evidence

The plaintiff underwent a colonoscopy on June 3, 2011, and was diagnosed with colon cancer on June 6, 2011. (Tr. 487, 504). The plaintiff underwent a right hemicolectomy on June 10, 2011. (Tr. 441).  The plaintiff received eight treatments of chemotherapy from July 2011 to October 2011. (Tr. 452, 466). On February 22, 2012, the plaintiff underwent a total hysterectomy. (Tr. 479).

On June 7, 2016, Robert Jaeger, D.O., performed a consultative examination of the plaintiff at the defendant's request and concluded the following: (1) the plaintiff had peripheral neuropathy, a decreased range of motion of the cervical and lumbosacral spine, and a history of uncontrolled hypertension; (2) her gait, bilateral strength, and sensory were normal; and (3) she could do fine and gross motor activities with her

3

hands. (Tr. 574, 577). The letter written by Dr. Jaeger on June 7, 2016, to the Department of Disability Determinations, indicated that the plaintiff "last worked at Mercy Hospital performing secretarial work and receptionist work" and that the plaintiff "did that for 17 years".  (Tr. 576).  Dr. Jaeger did not review any medical reports or objective testing and did not test fibromyalgia tender points. (Tr. 575-77). The plaintiff's PET/CT scan on June 17, 2016, revealed no evidence of recurrent or metastatic disease. (Tr. 596).

On June 30, 2016, Cesar E. Ceballos, M.D., examined the plaintiff and found that the strength in her left shoulder returned to normal after injection, her right shoulder had normal strength, and she was neurovascularly intact. (Tr. 640-42). Dr. Ceballos also noted that the plaintiff had good coordination, a normal gait, and no weakness or sensory deficits. (*Id.*) The cervical spine examination revealed no motor, sensory, reflex, or strength deficits. (Tr. 641). Dr. Ceballos found that the plaintiff had left shoulder impingement with rotator cuff tendinitis and cervical spine degenerative disc disease. (Tr. 643).

In a Report of Contact dated September 9, 2016, about a July 28, 2020, date of contact, Jennifer Hassel (for the Miami Social Security Administration) indicated that the plaintiff reported that she had difficulty buttoning and zipping her pants, lifting heavy pots and pans filled with water, practicing personal hygienic care, and gripping/grasping household items such as a mug and doorknob. (Tr. 365). Additionally, the plaintiff stated that she can drive short distances, that she must take breaks doing household chores due to hand numbness, and that her daughter does most of the cooking. (*Id.*)

On September 9, 2016, Loc Kim Le, M.D., a State agency medical consultant, reviewed the plaintiff's medical evidence through August 2, 2016, and concluded that the plaintiff could perform her past relevant work as a receptionist in a doctor's office. (Tr. 186-87). On December 21, 2016, Ronald Machado, M.D., another State agency medical consultant, reviewed the medical evidence from July 2014 through November 7, 2016. (Tr. 753, 760). Dr. Machado found that the plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday. (Tr. 754).

On May 19, 2017, the plaintiff visited Ortho Now Orthopedic Urgent Care in Doral, Florida.  Jorge Guerrero, a physician's assistant, under the supervision of Alejandro Bada, M.D., FACS, found that the plaintiff had lateral epicondylitis in her right elbow and that the nerve conduction velocity (NCV) test suggested carpal tunnel syndrome and showed that the median distribution symptoms are worse on the right side. (Tr. 876-77). However, further findings from the visit indicated that the plaintiff had no loss of muscle tone or atrophy, could open her hand completely without contractures or finger triggers, and could make a full fist. (*Id.*)

A bone density hip and spine x-ray from May 2018 showed that the plaintiff had normal density in both hips and mild osteopenia in her lumbar spine. (Tr. 850). On June 15, 2018, Olga Kromo, M.D., found that the cervical spine MRI from April 2018 showed disc disease and neural encroachment. (Tr. 767). Dr. Kromo also noted abnormalities of the plaintiff's gait, wrists, hands, cervical spine, and thoracic spine. (Tr. 768-69). However, Dr. Kromo found that the plaintiff's motor strength, shoulders, and lumbar spine were normal. (Tr. 768).

A lumbar spine x-ray ordered by Rafael Rivas-Chacon, M.D., and taken in August 2018, showed minimal spondylosis. (Tr. 848). On September 5, 2018, Dr. Rivas-Chacon diagnosed the plaintiff with mood disorder, other sleep disorders, and fibromyalgia. (Tr. 781). On October 12, 2018, Dr. Rivas-Chacon noted the following associated symptoms of fibromyalgia: decreased mobility, difficulty initiating sleep, joint tenderness, limping, nocturnal awakening and pain, numbness, and tingling in the arms and legs. (Tr. 91). On examination, Dr. Rivas-Chacon identified the plaintiff as having 10 of 18 total fibromyalgia trigger points in both the upper and lower body (bilateral posterior shoulders, bilateral chest, bilateral epicondyle, bilateral thigh, and bilateral knee). (Tr. 93). Additionally, Dr. Rivas-Chacon found that the plaintiff had moderate symptoms of mood disorder and noted that the multiple trigger points, impaired sleep, and mood disorder (depression) supported a diagnosis of fibromyalgia. (Tr. 91, 94). The plaintiff's pain was recorded as 8/10 in severity although she was taking Lyrica for pain. (Tr. 92, 94). Dr. Rivas-Chacon did not find that the plaintiff experienced join instability or muscle weakness. (Tr. 92).

III.   **Hearing Testimony**

A hearing was held before the ALJ on October 10, 2018, and the plaintiff was represented by counsel.  (Tr. 96-128). The plaintiff testified at the hearing.  (Tr. 102-117). A vocational expert ("VE"), Dr. Jackson, also testified at the hearing. (Tr. 118-28).

A.   **Plaintiff's Testimony**

The plaintiff testified that she has joint pains due to chemotherapy, neuropathy affecting her right hand, carpal tunnel syndrome, and right elbow tendonitis. (Tr. 106-07, 110). The plaintiff asserted that she cannot lift her right arm to brush her teeth, bend

down to put on her shoes due to her back, or tie her shoes because her hands start shaking and hurting. (Tr. 112-13, 115-17). The plaintiff stated that her job as a hospital admissions clerk was a "sit-down" job but that she would have to stand up to make a payment or answer the phone. (Tr. 117). The plaintiff also stated that the job required her to use her hands to work on the computer and answer the phone, but that she was currently unable to perform those tasks because of pain in her fingers. (Tr. 117). The plaintiff testified that she experiences severe back pain after sitting for about fifteen minutes, can lift and carry only one pound, and can only walk less than half a block before needing to stop to rest. (Tr. 121).

### B. VE's Testimony

At the hearing, the ALJ asked the VE to "describe the claimant's past work as actually performed, and as generally performed in the national economy." (Tr. 119). Dr. Jackson stated that "[t]he past relevant work is significant for one DOT title. And that is hospital admitting clerk, DOT number 205.362-018, sedentary exertional, SVP: 4." (*Id.*). The ALJ posed the following first hypothetical to the VE.

> Dr. Jackson, please imagine a hypothetical individual with the claimant's medical, educational, and vocational profile who is capable of performing the full range of light work, with the following additional limitations. This individual can frequently kneel, crouch, crawl, and stoop; can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently reach in all directions; and can frequently handle, finger, and feel. Can this individual perform any of the claimant's past work?

(Tr. 121). In response, the VE indicated that "the past work of a hospital admitting clerk would be allowed in this first hypothetical." (Tr. 122).

The ALJ then posed the second hypothetical listed below to the VE.

> Please imagine a second hypothetical individual with
> the claimant's medical, educational, and vocational
> profile, subject to the same limitations as the individual
> in hypothetical number one, except that this individual
> is, is limited to sedentary exertional work. And can that
> individual perform any of the claimant's past work.

(*Id.*). In response, the VE indicated that such a hypothetical person could perform the

plaintiff's past work.  Thereafter, the ALJ asked the following third hypothetical.

> [P]lease imagine a third hypothetical individual with the
> claimant's medical, educational, and vocational profile,
> subject to the same limitations as the individual in
> hypothetical number two, except that this individual can
> occasionally handle, finger, and feel. Can that individual
> perform any of the claimant's past work?

(Id.).  The VE indicated that such a hypothetical person could not perform any of the

plaintiff's past work but that such an individual could perform work as an insurance

clerk. (Tr. 122-23).

## THE ALJ'S DECISION-MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment that can be

expected to result in death, or has lasted or can last for a continuous period of not less

than twelve months." 42 U.S.C §§ 416(I); 423(d)(1); 20 C.F.R. § 404.905. The

impairment(s) must be severe, making the plaintiff "unable to do his previous work . . .

or any other kind of substantial gainful work which exists in the national economy . . .."

42 U.S.C § 423(d)(1); 20 C.F.R. §§ 404.905-404.911.

To determine whether the plaintiff is entitled to continued disability benefits, the

ALJ must apply an eight-step analysis. 20 C.F.R. § 404.1594(f).  At step one, an ALJ

must determine if the plaintiff is engaging in substantial gainful activity. If the plaintiff is

performing substantial gainful activity and any applicable trial work period has been completed, the plaintiff is no longer disabled. 20 CFR 404.1594(f)(1).

At step two, an ALJ must determine whether the plaintiff has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525 and 404.1526. If the plaintiff does, her disability continues. 20 CFR 404.1594(f)(2).

At step three, an ALJ must determine whether medical improvement has occurred.  20 CFR 404.1594(f)(3). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. 20 CFR 404. l 594(b)(1). If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.

At step four, an ALJ must determine whether medical improvement is related to the ability to work. 20 CFR 404.1594(f)(4). Medical improvement is related to the ability to work if it results in an increase in the plaintiff's capacity to perform basic work activities. 20 CFR 404. l 594(b)(3). If it does, the analysis proceeds to the sixth step.

At step five, an ALJ must determine if an exception to medical improvement applies. 20 CFR 404.1594(f)(5). There are two groups of exceptions. 20 CFR 404.1594(d) and (e). If one of the first group exceptions applies, the analysis proceeds to the next step. If one of the second group exceptions applies, the plaintiff's disability ends. If none apply, the claimant's disability continues.

At step six, an ALJ must determine whether all the plaintiff's current impairments in combination are severe.  20 CFR 404.1594(f)(6). If all current impairments in

combination do not significantly limit the plaintiff's ability to do basic work activities, the plaintiff is no longer disabled. If they do, the analysis proceeds to the next step.

At step seven, an ALJ must assess the plaintiff's residual functional capacity (RFC) based on the current impairments and determine if she can perform past relevant work.  20 CFR 404.1594(f)(7). If the plaintiff has the capacity to perform past relevant work, her disability has ended. If not, the analysis proceeds to the last step.

At the last step, an ALJ must determine whether other work exists that the plaintiff can perform, given her RFC and considering her age, education, and past work experience.  20 CFR 404.1594(f)(8). If the plaintiff can perform other work, she is no longer disabled. If the plaintiff cannot perform other work, her disability continues. In order to support a  finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the plaintiff can do, given her RFC, age, education, and work  experience.

## <u>THE ALJ'S FINDINGS</u>

On January 25, 2019, the ALJ decided that the plaintiff's disability under sections 216(i) and 223(f) of the Social Security Act ended on October 1, 2016, and that the plaintiff had not become disabled again since that date. (Tr. 25). The ALJ concluded that the most favorable medical finding that the claimant was disabled, known as the "comparison point decision" ("CPD"), was the decision by ALJ Reeves on May 4, 2012. (Tr. 18).

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the CPD. (*Id.*).  Next, the ALJ determined that the medical evidence

established that, since October 1, 2016, the plaintiff continued to have the following medically determinable impairments: hypertension, obesity, polyarthritis, degenerative disc disease of the spine, hip synovitis, osteopenia, neuropathy, left shoulder impingement, bilateral carpal tunnel syndrome, lateral epicondylitis of the right elbow, and irritable bowel syndrome. (*Id.*).

At step two, the ALJ found that, since October 1, 2016, the plaintiff had not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in listed 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525-.1526). (Tr. 18).  At step three, the ALJ found that medical improvement occurred on October 1, 2016. (Tr. 19). The ALJ found at step four that the plaintiff's medical improvement was related to her ability to work because it resulted in an increase in her RFC. (*Id.*). Proceeding to step six, the ALJ concluded that the plaintiff's continuing impairments caused more than minimal limitation in her ability to perform basic work activities. (Tr. 20).

At step seven, the ALJ found that, since October 1, 2016, the plaintiff had the RFC to perform "light work" consistent with 20 C.F.R. § 404.1567(b), with the following limitations:

> . . . the claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She can sit for a total of about 6 hours in an 8-hour workday with normal breaks. She can stand and/or walk for a total of 6 hours in an 8-hour workday with normal breaks. The claimant can frequently kneel, crouch, crawl, and stoop. She can frequently climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can frequently reach in all directions. She can frequently handle, finger, and feel.

(*Id.*) The ALJ stated that the plaintiff's medically determinable impairments could have reasonably been expected to produce her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical and other evidence. (Tr. 21).

Lastly, the ALJ concluded that the plaintiff could perform past relevant work as a hospital admitting clerk. (Tr. 24.). Therefore, the ALJ concluded that the plaintiff's disability ended on October 1, 2016, and that the plaintiff had not become disabled again since that date. (Id.).

## **STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, the Court must determine whether it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see* Wolfe v. Chater, 86 F. 3d 1072,1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or substitute their discretion). On judicial review, decisions made by the Commissioner of Social Security are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C. § 405(g) (2006); See Kelley v. Apfel, 185 F. 3d 1211,1213 (11th Cir. 1999). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. See Miles v. Charter, 84 F.3d 1397, 1400 (11th Cir. 1996). In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account

evidence favorable as well as unfavorable to the decision." <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact, no presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. <u>See</u> <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145-11456 (11th Cir. 1991) (holding "Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *accord*, <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).

The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. <u>See</u> <u>Davis v. Shalala</u>, 985 F. 2d 528, 531 (11th Cir. 1993). The court may not, however, decide the facts anew, reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. <u>See</u> <u>Miles</u>, 84 F.3d at 1400; <u>See also</u> <u>Baker v. Sullivan</u>, 880 F.2d 319, 321 (11th Cir. 1989). Factual evidence is presumed valid, but the legal standard applied is not. <u>See</u> <u>Martin</u>, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. (<u>Id</u>.).

## ANALYSIS

The plaintiff seeks a reversal or remand of the defendant's final decision. (DE #

19, 7/1/2020).  The plaintiff asserts that remand is proper under sentence four 42 U.S.C.

§ 405(g) [2], and requests a remand with instructions to:

> (1) address all medical evidence and opinions; (2)
> reassess Ms. Marichal's impairments pursuant to the
> sequential evaluation based on all the evidence of record;
> (3) reassess Ms. Marichal's residual functional capacity
> based on all of the evidence of record; (4) reassess Ms.
> Marichal's allegations of symptoms and limitations; (5)
> obtain information regarding Ms. Marichal's past relevant
> work and obtain testimony from a vocational witness; and
> (6) issue a new decision.

(Plaintiff's Motion for Summary Judgment at 14-15).

The plaintiff argues that the defendant "erred as a matter of law in finding that

Ms. Marichal's eligibility for a Period of Disability/Disability Insurance Benefits and

Supplemental Security Income ended on October 1, 2016, and issued a decision which

was not based on substantial evidence." (*Id.* at 1). The plaintiff contends the issues in

this matter are as follows: (1) the evidence submitted to the Appeals Council merits

remand; (2) the finding at step four[3] that the plaintiff can perform her past relevant work

is legally deficient and unsupported by substantial evidence; (3) the RFC determination

is no supported by substantial evidence; and (4) the rejection of the plaintiff's alleged

symptoms and limitations is not supported by substantial evidence. (*Id.* at 1-2). As set

---

[2] A sentence four reversal is the district court's ability under 42 U.S.C. § 405(g) to remand a final
decision "in conjunction with a judgment affirming, modifying, or reversing the Secretary's
decision . . . ." *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2159 (1991).

[3] Although the plaintiff indicates step four, it is actually step seven because this is a disability
review case.

forth below, the undersigned finds that the ALJ applied the proper legal standards and that substantial evidence supports the ALJ's decision.

I.      **Evidence Submitted to Appeals Council Does Not Merit Remand**

After the ALJ's decision, the plaintiff submitted additional medical evidence to the Appeals Council. (Tr. 2, 31-95). In the motion and the reply, the plaintiff indicates that "the Appeals Council reviewed this evidence but found that '[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 6, 2018.'" (Motion, (DE # 19, 7/1/2020) at p. 6 and Reply, (DE # 23, 8/31/20) at p. 2). In other words, in the Motion and the Reply, the plaintiff contends that Appeals Counsel did not consider the "new" evidence submitted to them because the "new" evidence did not relate to the period at issue. The defendant noted in his Motion that the appeals council did not indicate that the new information did not relate to the period at issue, rather that the new evidence did not show a reasonable probability that it would change the outcome the decision.

When reviewing the record, the undersigned could not find the language referred to by the plaintiff in the Appeals Council Record indicating that that the "new" evidence did not relate to the period at issue. The undersigned then asked the plaintiff to provide the Court with the language from the appeals council that indicated that the "new" evidence did not relate to the period at issue. The plaintiff responded with a filing that indicated the quote from the appeals council about the "new" evidence not relating to the period at issue was a scrivener's error. As the language indicating that the "new" evidence did not relate to the period at issue was not actually written by the appeals

council in this matter, the argument by the plaintiff that remand is warranted based on this language fails, and a remand is not warranted based on that language.

The plaintiff also argues that she is entitled to a remand due to the new evidence submitted to the Appeals Council, i.e. the October 12, 2018, treatment note from rheumatologist Rafael Rivas-Chacon, M.D., that diagnoses the plaintiff with fibromyalgia and notes mental impairments with moderate symptoms.  The plaintiff asserts that remand is appropriate when an Appeals Council does not adequately consider the new evidence.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1268 (11th Cir. 2007). The plaintiff also asserts that the failure by the Appeals Council to adequately evaluate the new evidence may result in reversal.  Id, citing Bowen v. Heckler, 748 F.2d 629, 634 (11th Cir. 1984).   The undersigned notes, however, that the Appeals Council is not required to discuss new evidence submitted to it when it denies a claimant's request for review.  Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 784 (11th Cir. 2014). "Bowen requires the Appeals Council to apply the correct legal standards in performing its duties; it does not require the Appeals Council, when denying a request for review, to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision."[4]  Id.

Citing to Ingram at 1266 and 1261, the defendant notes that courts consider "evidence submitted to the Appeals Council with the record as a whole to determine whether substantial evidence supports the ALJ's decision." Defendant's Motion for Summary Judgment at 5.  As asserted by the defendant,

> "[t]he Appeals Council will review a case if it 'receives additional evidence that is new, material, and relates to

---

[4] Bowen refers to Bowen v. Heckler, 748 F.2d 629 (11th Cir. 1984).

> the period on or before the date of the hearing decision,
> and there is a reasonable probability that the additional
> evidence would change the outcome of the decision.'
> 20 C.F.R. § 404.970(a)(5); Ingram, 496 F.3d at 1261;
> see also Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir.
> 1999) (noting the issue in a disability case is whether a
> claimant was 'entitled to benefits during a specific period
> of time, which was necessarily prior to the date of the
> ALJ decision'). "This does not mean, however, that the
> Appeals Council grants a claimant's request for review
> of an ALJ's decision whenever additional evidence
> meets these criteria.  In many cases, the Appeals
> Council adds evidence that meets the criteria to the
> record, but denies the request for review.  Under our
> current rules the Appeals Council will review a case in
> this situation only if it finds that the ALJ's action,
> findings, or conclusion is contrary to the weight of the
> evidence currently of record.' 81 Fed. Reg. at 90,991.

Defendant's Motion for Summary Judgment at p. 5.

As correctly noted by the defendant, the plaintiff does not demonstrate that the additional evidence submitted to the Appeals Council, when considered together with the record as a whole, made the ALJ's decision erroneous. See Ingram, 496 F.3d at 1262.  The plaintiff's request for review was denied by the Appeals Council on November 19, 2019. (Tr. 1-4).  The Appeals Council indicated that it considered the plaintiff's explanations for her opposition to the ALJ's decision, but the Appeals Council determined that the explanations did not give adequate reasons for altering the ALJ's decision.  (Tr. 1).  Despite the plaintiff's assertion that the Appeals Council needed to specifically evaluate the new evidence, the Eleventh Circuit has held that the Appeals Council need not give a detailed explanation of the new evidence when the Appeals Council denies the plaintiff's request for review.  See Parks ex rel D.P., v. Comm'r. of Soc, Sec, Admin., 783 F.3d 847, 852-53 (11th Cir. 2015).  In Parks the court noted that "[i]n Mitchell, we held that there is no requirement that 'the Appeals Council ... provide a

detailed discussion of a claimant's new evidence when denying a request for review.' *Id.* at 783. We explained that, where 'the Appeals Council expressly stated in its letter to [the claimant] that it had considered his additional evidence, ... we ha[d] no basis ... to second-guess that assertion'." Parks, 783 F.3d at 853. Accordingly, the Appeals Council was not required to specifically evaluate the new evidence.

Moreover, as correctly noted by the defendant, the plaintiff failed to demonstrate that the additional materials submitted undermined the ALJ's decision. See Ingram, 496 F.3d at 1262. The Appeals Council specifically indicated that the additional evidence submitted by the plaintiff did not show a reasonable probability that it would alter the outcome of the ALJ's decision. (Tr. 2). Despite the plaintiff's assertion that the additional evidence submitted provided a new diagnoses of fibromyalgia and mood disorder, conditions that would have been relevant to the ALJ's decision, the diagnoses of fibromyalgia and mood disorder were first documented by Dr. Rivas Chacon in September 2018, and mentioned once in the medical records before the ALJ. (Tr. 781). The ALJ's decision indicated that the plaintiff was not disabled from October 1, 2016, through the date of the decision, January 25, 2019. (Tr. 25). The diagnoses of fibromyalgia and mood disorder, which were diagnosed in September 2018, (at most five (5) months before the ALJ decision) would fail to meet the 12-month durational requirement for serious impairments. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509; Barnhart v. Walton, 535 U.S. 212, 217 (2002) (holding that a claimant's impairments and inability to work must last for a continuous period of at least 12 months). The inability to work and the impairments must both last for a continuous period of at least 12 months. See Id. Moreover, a plaintiff is unable to

meet the continuous 12-month period by combining two or more severe impairments that are unrelated.  <u>See</u> 20 C.F.R. § 404.1522; SSR 82-52.

Accordingly, because the plaintiff's conditions of fibromyalgia and mood disorder had not lasted a continuous 12 months at the time of the ALJ's decision, they do not qualify as impairments and the ALJ was not required to evaluate the conditions or the limitations caused by the conditions in determining the plaintiff's RFC.  <u>See</u> 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509; <u>Walton</u>, 535 U.S. at 217.  The undersigned finds that the Appeals Council made a correct determination that the additional evidence submitted failed to create a reasonable probability that it would change the outcome of the ALJ's decision, and the plaintiff has failed to demonstrate that the additional records undermined the decision of the ALJ.

II.     **<u>The Finding that the Plaintiff Can Perform her Past Relevant Work
        is Legally Valid and Supported by Substantial Evidence</u>**

The plaintiff asserts that the ALJ did not issue any finding specifying whether the plaintiff could perform her past relevant work, either as actually performed or as generally performed, instead the ALJ only found that the plaintiff "can perform her past work" (Tr. 24). (DE # 19, 7/1/2020 at 9). The plaintiff asserts that the ALJ improperly found the plaintiff could perform a "past relevant job based on a broad, generic, occupational classification of that job" (SSR 82-61). (DE # 19, 7/1/2020 at 9).  The plaintiff also asserts that the vocational testimony failed to provide clarity or context for that finding. (DE # 19, 7/1/2020 at 9).

At step seven, the ALJ is required to compare the claimant's RFC assessment with the physical and mental demands of the claimant's past work. "Past relevant work"

is work that the claimant has "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1) (2019). *See* 20 C.F.R. § 404.1520(f) (2019). Under Social Security Rule 82-62, "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." SSR 82-62.

There are three possible tests for determining whether a claimant retains the capacity to perform her past relevant work. SSR 82-61. The ALJ may determine whether the claimant: (1) "retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job"; (2) can perform the particular demands and duties of a job "as he or she actually performed it"; or (3) "as ordinarily required by employers throughout the national economy," for which the Dictionary of Occupational Titles (DOT) can be relied upon "to define the job as it is *usually* performed in the national economy." *Id.* at *1-2 (emphasis original); *see also Scott v. Comm'r of Soc. Sec.,* 440 F. App'x 726, 728 (11th Cir. 2011) (stating "an ALJ may rely on information contained in the [DOT] to determine whether a claimant can perform her past relevant work as it is generally performed in the national economy"). The first test listed above, however, will likely lead to fallacious and unsupportable findings, SSR 82-61, leaving only the second two tests as reliable tests to determine if a claimant can perform particular job duties.

The plaintiff bears the burden of demonstrating she is unable to perform her past relevant work either as she performed the work in the past or as the work is generally

performed in the economy.  See Jackson v. Bowen, 801 F.2d 1291, 1293-94 (1th Cir. 1986).

> The regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986). "A claimant makes a prima facie showing of disability only by establishing 'that he is unable to return to his former *type* of work.' " *Pelletier v. Secretary of HEW,* 525 F.2d 158, 160 (1st Cir.1975) (emphasis in First Circuit opinion) (citations omitted). A claimant has to "show an inability to return to her previous work (*i.e.,* occupation), and not simply to her specific prior job." *DeLoatche v. Heckler,* 715 F.2d 148, 151 (4th Cir.1983). *See also Jock v. Harris,* 651 F.2d 133, 135 (2d Cir.1981).
>
> Id. at 1293.

Here, the ALJ found that the plaintiff could do her past relevant work as a hospital admitting clerk based on the plaintiff's RFC and the physical demands of the job.  (Tr. 24, 121-22).  "[A]n ALJ may rely on information contained in the Dictionary of Occupational Titles to determine whether a claimant can perform her past relevant work as it is generally performed in the national economy."  Scott v. Comm'r of Soc. Sec., 440 F.App'x 726, 728 (11th Cir. 2011), *see also* 20 C.F.R. § 404.1560(b)(2) (explaining that the Social Security Administration "may use ... resources, such as the Dictionary of Occupational Titles ... published by the Department of Labor, to obtain evidence ... to help ... determine whether you can do your past relevant work, given your residual functional capacity").

The undersigned finds that the ALJ properly utilized the testimony of the VE to find that the plaintiff's past relevant work as a hospital admitting clerk as generally performed in the national economy was within her RFC. When the ALJ asked the VE to "describe

the claimant's past work as actually performed, and as generally performed in the national economy," the VE stated that the plaintiff's "past relevant work is significant for one DOT title. And that is hospital admitting clerk … DOT number 205.362-018, sedentary exertional, SVP: 4." (Tr. 119). The VE relied upon the DOT in his response, which can be used "to define the job as it is *usually* performed in the national economy." SSR 82-61. The VE's response does not resemble the examples of a broad, generic occupational classification given in SSR 82-61: "delivery job" and "packaging job." SSR 82-61 at *1. Although the VE did not explicitly indicate whether he described the plaintiff's past job as a hospital admitting clerk as actually or generally performed, it can be inferred by the VE's use of the DOT definition that the VE characterized the plaintiff's past job as a hospital admitting clerk as ordinarily performed in the national economy. This is an acceptable way to determine whether a claimant retains the capacity to perform past relevant work.

The plaintiff also contends that the administrative record does not otherwise identify what the plaintiff's past relevant work entailed, alleging that the only reference to any of the plaintiff's job duties in the record is in a medical report, which noted that the plaintiff "worked at Mercy Hospital performing secretarial work and receptionist work . . . " (Tr. 576). (DE # 19, 7/1/2020 at 10). The plaintiff asserts that the decision by the ALJ "does not provide a clear finding nor does the vocational testimony adopted as the basis of the step four determination" provide enough "information regarding the duties required of the past relevant work." (DE # 19, 7/1/2020 at 10).

Under SSR 82-62, because the decision whether the claimant retains the RFC to perform past relevant work "is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and

explicitly as circumstances permit." SSR 82-62 at *3. Sufficient documentation is required

to support such a decision. *Id.*

> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate.

*Id.* "The claimant is the primary source for vocational documentation," and the claimant's

statements regarding past relevant work "are generally sufficient for determining the skill

level; exertional demands and nonexertional demands of such work." *Id.* The

determination that an individual can perform a past relevant job must contain a finding of

fact as to the physical and mental demands of the past job/occupation. *Id.* at *4.

The undersigned finds that the information about the plaintiff's past work along with

the testimony of the VE was sufficient for the ALJ to make a finding of fact about the

physical and mental demands of the plaintiff's past relevant work. The VE stated that the

DOT defined "hospital admitting clerk" as a sedentary job with a specific vocational

preparation of four (4). (Tr. 119). Additionally, when asked a hypothetical regarding an

individual with the claimant's age, education, and work experience and with the RFC that

the ALJ ultimately found for the plaintiff, the VE testified that this individual could perform

the plaintiff's past work as a hospital admitting clerk. (Tr. 121-22). The plaintiff testified

that her job as a hospital admissions clerk was a "sit-down" job that required her to (1)

stand up to make a payment or answer the phone and (2) use her hands to operate the

computer and phone. (Tr. 117). In the decision, the ALJ made a finding of fact as to the

physical and mental demands of plaintiff's past relevant work based on the DOT definition

and the VE's testimony. (Tr. 24). Although SSR 82-62 requires that detailed information

about the demands of the claimant's past work be obtained as appropriate, SSR 82-61 allows an ALJ to make such decision based on a description of the job as usually performed in the national economy. SSR 82-61 at *2, SSR 82-62 at *3. In this case, the DOT definition given by the VE provided such a description.

Additionally, the record suggests the ALJ would have found the plaintiff "not disabled" at step eight of the analysis. The VE stated that other work existed in the national economy that an individual with the plaintiff's medical, educational, and vocational profile, and RFC could perform even if the individual could only *occasionally* handle, finger, and feel. (Tr. 122-23).

In accordance with the foregoing analysis, the undersigned finds that the ALJ's finding that the plaintiff could perform her past relevant work is valid and supported by substantial evidence.

III.   **The RFC is Supported by Substantial Evidence**

The plaintiff claims that the ALJ, in determining the plaintiff's RFC, relied on medical opinions that were based on an incomplete record. (DE # 19, 7/1/2020 at 11). The plaintiff also argues that the ALJ's RFC finding was not supported by substantial evidence because the record allegedly documents significant objective abnormalities and that the RFC determination does not properly consider the plaintiff's impairments that developed or worsened since the comparison point decision (CPD). (DE # 19, 7/1/2020 at 11).

An ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3) (2019). In this matter, the undersigned notes that the ALJ considered all the medical evidence of record except that

24

which the plaintiff submitted to the Appeals Council. The plaintiff only mentions the following abnormalities not reviewed by the State agency medical consultants: the 2017 NCV testing that suggested carpal tunnel syndrome and showed that median distribution symptoms are worse on the right side (Tr. 876); the April 2018 cervical spine MRI interpreted to show disc disease and neural encroachment (Tr. 767); Dr. Kromo's finding of abnormalities of gait, wrists, hands, cervical and thoracic spine (Tr. 768-69); and Dr. Rivas Chacon's October diagnosis of fibromyalgia and mood disorder (Tr. 91). (DE #19, 7/1/2020 at 11-12). The undersigned finds, however, that the ALJ properly addressed these abnormalities except for the October diagnosis of fibromyalgia and mood disorder, which was included in the post-hearing evidence submitted to the Appeals Council. (Tr. 23).

The ALJ afforded partial, as opposed to significant weight to the September 9, 2016, State agency medical consultant opinion of Dr. Le and the December 21, 2016, State agency medical consultant opinion of Dr. Machado, "but only to the extent that they are consistent with the RFC." (Tr. 24). Dr. Le did not review medical evidence after August 2016, and Dr. Machado did not review medical evidence after November 2016. (Tr. 186, 760). On September 9, 2016, Dr. Le concluded that the plaintiff could perform her past relevant work as a receptionist in a doctor's office. (Tr. 186-87). On December 21, 2016, Dr. Machado found that the plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday. (Tr. 754). The fact that the ALJ afforded partial weight to the opinions of Dr. Le and Dr. Machado, who did not consider the

aforementioned abnormalities, does not signify that the RFC was unsupported by substantial evidence.

The plaintiff also asserts that Dr. Jaeger's opinion does not address all relevant issues and was based on incomplete information because Dr. Jaeger did not review any medical reports or objective testing and did not test fibromyalgia tender points. (DE # 19, 7/1/2020 at 12). The ALJ afforded significant weight to the clinical findings and observations of Dr. Jaeger but noted that they do not constitute an opinion. (Tr. 24). Accordingly, the undersigned finds that the fact that the ALJ afforded significant weight to Dr. Jaeger's findings does not suggest that the RFC determination was unsupported by substantial evidence.

The undersigned notes that despite showing abnormalities, the medical records generally show that the plaintiff had normal strength. Dr. Jaeger found that the plaintiff's gait, strength, and sensory were normal and that the plaintiff could do fine and gross motor activities with her hands. (Tr. 577). When Jorge Guerrero, physician assistant, at Orthopedic Now noted that the abnormal results of the NCV test suggested carpal tunnel syndrome, he also found that the plaintiff had no loss of muscle or atrophy. (Tr. 876). In addition to finding abnormalities, neural encroachment, and disc disease, Dr. Kromo concluded that the plaintiff had normal motor strength, normal shoulders, and a full range of motion in her cervical spine, and that her neuropathy briefly improves with epidural blocks. (Tr. 768-69). These facts, detailed more in section IV below, provide substantial evidence to support the ALJ's RFC determination.

IV.   **The Evaluation of the Plaintiff's Allegations Regarding the Intensity, Persistence, and Limiting Effects of Her Symptoms is Supported by Substantial Evidence**

The plaintiff asserts that the ALJ's rejection of her allegations of symptoms and limitations is not supported by substantial evidence. (DE # 19, 7/1/2020 at 13). The plaintiff contends that the ALJ did not give clear reasons for finding that the plaintiff's "statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical and other evidence" (Tr. 21). (DE # 19, 7/1/2020 at 13). Additionally, the plaintiff asserts that the evidence cited by the ALJ is consistent with the plaintiff's allegations of pain and limitations. (DE # 19, 7/1/2020 at 13).

The ALJ must articulate reasons based on substantial evidence when refusing to credit a claimant's subjective pain testimony. *Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991). In *Jones*, the appellant claimed that the ALJ failed to give adequate reasons for rejecting his pain testimony and treating physician's conclusions. *Id.* The ALJ held that there was no objective clinical evidence of a physical condition which could produce the appellant's alleged symptoms. *Id.* The court found that multiple medical reports contradicted the appellant's allegations and held that the ALJ showed good cause for rejecting the appellant's pain testimony. *Id.* at 1532-33. In this case, as noted below, the ALJ similarly cited to multiple medical records that suggested the plaintiff's symptoms were not as limiting as alleged. (Tr. 21-23).

The ALJ recounted the following medical evidence to support the conclusion that the plaintiff's allegations concerning her symptoms were not consistent with the medical evidence. (Tr. 21). Dr. Jaeger found that the plaintiff's gait, strength, and sensory were

normal and that the plaintiff could do fine and gross motor activities with her hands. (Tr. 577). Dr. Ceballos also noted that the plaintiff had good coordination, a normal gait, and no weakness or sensory deficit. (Tr. 22, 641-42). Dr. Ceballos also found that the strength in the plaintiff's left shoulder returned to normal after injection. (Tr. 22, 641). Jorge Guerrero, physician assistant, at Orthopedic Now noted that the plaintiff had no loss of muscle tone or atrophy, could open her hand completely without contractures or finger triggers, and could make a full fist. (Tr. 23, 876-77). Dr. Kromo concluded that the plaintiff's motor strength, shoulders, and lumbar spine were normal. (Tr. 23, 768). A bone density hip and spine x-ray from May 2018 showed that the plaintiff had normal density in both hips and mild osteopenia in her lumbar spine. (Tr. 23, 850). A lumbar spine x-ray from August 2018 showed minimal spondylosis. (Tr. 23, 848). Additionally, Dr. Rivas-Chacon found that the plaintiff did not experience join instability or muscle weakness. (Tr. 92). The undersigned finds that there is substantial evidence in the record to support the ALJ's conclusion that the plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical records.

The plaintiff also asserts that the ALJ's finding that the plaintiff was "able to engage in activities requiring use of her hands such as driving and using the microwave" (Tr. 24) does not establish her ability to use her hands and fingers frequently in an eight-hour workday. (DE # 19, 7/1/2020 at 14). The ALJ did not address the plaintiff's statements that she struggles to grasp household items such as a mug and door knob, use buttons and zippers, and practice self-care; that she has to take breaks when performing household chores due to hand numbness; that she can only drive short distances; and that her daughter does the majority of the cooking. (Tr. 365). However, the undersigned

finds that the ALJ properly made the finding that the plaintiff can "frequently handle, finger, and feel" based on the medical evidence, in which the plaintiff's strength was often found to be normal.

Accordingly, for the reasons stated above, the undersigned finds that there is substantial evidence to support the ALJ's determination that the plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical and other evidence.

## **RECOMMENDATION**

In accordance with the foregoing Report and Recommendation, the undersigned respectfully recommends that the Plaintiff's Motion for Summary Judgment (DE # 19, 7/1/2020) be DENIED and that the Defendant's Motion for Summary Judgment (DE # 20, 7/30/2020) be GRANTED.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Court Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary, in the interest of justice. See 28 U.S.C § 636(b)(1); See 28 U.S.C § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED, in Chambers, at the United States Courthouse, this 17th day of December 2020.

_____

JOHN J. O'SULLIVAN
CHIEF UNITED STATES DISTRICT COUT JUDGE